WINDEDAHL et al., Respondents, v. HARRIS et al., Appellants

(156 N. W. 489.)

(File No. 3777.    Opinion filed February 15, 1916.    Rehearing denied April 11, 1916.)

1.  Appeals—Trial—Review—Special Findings by Court—No Exception, Effect.

      Where, on trial of a case, special findings were submitted to and answered by the jury, but the trial court thereafter made its own findings and entered judgment thereon, held, that error in the taking of the case from the jury, assigned by the appellant on the ground that the cause was noticed by both parties as a jury trial, and up to the time of the submission of the special findings was tried as a jury case, cannot be urged on appeal, there having been no exception interposed by appellant to the submission of the special findings, or to the court's action in making and entering findings.

2.  Appeals—Review—Objection to Introduction of Evidence for Insufficiency of Complaint—Necessity of Exception.

      Where appellant assigns error in overruling his objection to introduction of evidence because complaint did not state a cause

of action, such assignment has no support in the record, no exception having been saved to the court's ruling upon the objection.

3. **Fraud—Exchange of Properties—Rescission—Showing Other and More Valuable Land—Sufficiency of Evidence.**

In a suit to rescind a contract of exchange of hardware for land, where the trial court found that the contract was obtained by fraud and deceit practiced upon respondent, who had no knowledge of the land to be exchanged and who was knowingly shown by appellant and his agent other land which lay smoother and was much more valuable than the land exchanged, as being the land in question, that the latter was so rough and stony that but little of it could be broken by traction plow, although represented to be good tillable land nearly all of which could be so broken, held, that the evidence is clear and convincing and sufficient, to sustain the findings, and that the findings are sufficient to support the judgment in favor of respondent, based thereon.

4. **Same—Rescission—Representations as to Surface Conditions of Land—Necessity of Reliance Upon Representations.**

It matters not what representations were made by defendant, in a proposed exchange of land by him for hardware, as to surface conditions of the land, if plaintiffs did not made their trade relying upon the representations, but went upon the land and had full opportunity to examine same, and they cannot demand rescission on account of such representations.

5. **Fraud—"Actual Fraud"—"Deceit"—Silence as Deceit—Statute.**

Under Civ. Code, Sec. 1201, defining actual fraud as the suppression of that which is true, by one having knowledge or belief of the fact, with intent to deceive another, or to induce him to enter into the contract, held, that deceit may consist in silence when honesty requires spech, as much as in speech itself.

6. **Rescission—Fraud—Exchange of Properties—Elements of Deceit, Sufficiency of Evidence on.**

In a suit for rescission of a contract of exchange of land for hardware, held, that findings that plaintiffs, to whom the land was exchanged, had no previous knowledge of the land, relied upon defendant to show it to them, which defendant assumed to do, that, for the purpose of deceiving and defrauding plaintiffs, defendant wrongfully and knowingly took plaintiffs upon and showed them other land of better appearance and quality than that of the land afterwards conveyed, and that plaintiffs were obliged to and did rely upon defendant and his agents as to the location and boundaries of the land, and would not have made the exchange except for such statements and represen-

tations, contained every element constituting such deceit as will warrant rescission of the contract.

7. **Rescission—Exchange of Properties—Damages, Finding as to, Necessity.**

In a suit seeking rescission of an executed contract for exchange of properties, and not for damages arising from a rescinded contract, a finding that plaintiff was injured or damaged is not essential.

8. **Evidence—Exchange of Land—Rescission—Subsequent Encumbrance of Exchanged Land, Presumption Against.**

In a suit to rescind an executed contract of exchange of land for hardware, where plaintiffs, before suit, tendered a deed to the land which had been conveyed to them under the contract, subject to a pre-existing mortgage upon it, and kept the tender good to time of trial and filed the deed in court, and the court decreed delivery of the deed to defendant when he pays plaintiff the adjudged value of the hardware, **held,** that it will be presumed, if not changed by evidence, against the objection that plaintiffs may have encumbered the title they received from defendant, that the title continued to stand in the same condition as to encumbrance as when conveyed to plaintiffs; insufficient time having elapsed in the instant case to destroy such presumption.

9. **Trial—Judgment—Additional Findings on Motion for New Trial—Power to Alter Judgment.**

In a suit to rescind an executed contract of exchange of land for hardware, where the trial court apparently proceeded, in making its findings, upon the theory of an action for damages based upon a rescission, and failed to find that the deed tendered by plaintiffs was deposited in court, and in its judgment apparently assumed the title had again vested in defendant, and, without decreeing rescission, merely rendered judgment for value of the hardware, and upon motion for new trial defendant urged the necessity of reinvestment of title in him, and the court thereupon made a finding of tender and deposit of deed, and changed the judgment so as to provide for reconveyance upon payment of the amount found due, and findings and judgment were so changed nunc pro tunc, **held,** that the action of the trial court should be sustained, since the judgment as finally rendered but speaks the real judgment of the court as evidenced by the whole record.

Appeal from Circuit Court, Walworth County. Hon. JOSEPH H. BOTTUM, Judge.

Action by Henry O. Windedahl and another, against J. W. Harris and another, for rescission of a contract of exchange of land for hardware. From a judgment for plaintiffs, and from an

order denying a new trial, defendants appeal. Judgment and order affirmed.

*Carpenter & Morrison,* and *Julius Skaug,* for Appellants.

*Case & Case,* and *Robert D. Jones,* for Respondents.

(4) To point four of the opinion, Appellants cited: McKnight v. Thompson, (Neb.) 58 N. W. 453; Wyman v. Wilmarth, 1 S. D. 172.

(8) To point eight of the opinion, Respondents cited: Jones on Ev., Vol. 1, Sec. 58, p. 511; State ex rel. Wilwaukee Medical College v. Chittenden et al., 107 N. W. 501; 20th Century Dig., p. 138, Sec. 87; Wigmore on Evidence, Sec. 437.

(9) To point nine of the opinion, Appellants cited: Williams v. Wilson, 31 Ky. (1 Dana) 157; Waters v. Lemmon, 4 Ohio (4 Ham.) 229; Territory v. Christensen, 31 N. W. 847; Roberts v. Haggert, (S. D.) 29 N. W. 656; 23 Cyc. 861; 15 Encly. of Pl. and Pr., 209; Wolfe v. Davis, 74 N. C. 597; Cleveland Leader Printing Co. v. Green, 40 N. E. 201; First National Bank of Fresno v. Dusy et al., 42 Pac. 476; Girrard Trust Co. v. Null, 149 N. W. 809.

Respondents cited: Black on Judgments, p. 171, Secs. 155, 156, 157, 173, 162; Cyc. Vol. 23, under Judgments, Sec. 8, p. 859, Sec. 5, p. 869; Willson v. District Court of Polk County, (Iowa) 147 N. W. 766.

WHITING, J. Plaintiffs seek to rescind an executed contract under which they conveyed a stock of hardware to the defendant Harris in exchange for 280 acres of land situate in Deuel county, S. D. For the purposes of this appeal Harris will be treated as the sole defendant and appellant. The action was tried before the court and a jury. The jury answered certain special findings submitted to it. These findings were all, with the exception of one, incorporated into the court's findings. Its findings and conclusions were in favor of the plaintiffs, and judgment was entered thereon. From such judgment and an order denying a new trial, this appeal was taken.

[1] Appellant assigns as error the taking of the final determination of this cause from the jury. As grounds for such assignment he states that the cause was noticed as a jury trial by both parties, and that up to the time of the submission of the special findings it had been tried out as though it were a jury

case. This assignment has no support in the record, as appellant interposed no objection to the submission of the special findings or to the court's action in making and entering findings.

[2] Appellant assigns as error the overruling of his objection to the introduction of any evidence—such objection being based upon the ground that the complaint did not state facts sufficient to constitute a cause of action. This assignment also has no support in the record, as no exception was saved to the ruling of the court thereon.

[3] The only matters left for our consideration, save and except those pertaining to certain things occurring after the entry of judgment herein, are the sufficiency of the evidence to sustain the court's findings and the sufficiency of such findings to support its conclusions and judgment. The respondents alleged, and the court found, that the contract was procured by means of fraud and deceit practiced by appellant and his agents, which fraud and deceit pertained to four matters. We shall determine this appeal upon the sufficiency of the evidence to support the court's findings as to the alleged fraud and deceit pertaining to but one of these matters, and upon the sufficiency of these particular findings to support the judgment, as it is clear to us that, if the evidence supported these particular findings and such findings cover all the elements of fraud and deceit necessary to a right of rescission, the judgment finally entered should be sustained. The respondents charged: (1) That the land contracted for was represented to be good tillable land nearly all of which could be broken up by means of a traction plowing outfit; but that, as a matter of fact, the land was so rough and hilly and so covered with stone that but very small patches thereof could be broken at all, and these not with traction power, and that in all but a small proportion of said land could be tilled. (2) That appellant undertook to show the land to the respondents, whom appellant knew to be entirely unfamiliar therewith, and to that end employed agents who purported to show said land to respondents, but who, in fact and in truth, showed other and different land, knowing that they were showing such other and different land, and knowing that respondents supposed they were examining the land contracted for; and that the surface conditions of the land so examined answered the representations that had been made, and was land of much greater value than the

land covered by the contract and which was conveyed to respondents. The court found these charges to be true.

[4, 5] It must be conceded that, no matter what representations were made as to the surface conditions of the land offered in trade, if respondents did not make their trade relying on such representations, but went upon the land and had a full and fair opportunity to examine the same, they could not demand rescission on account of any misrepresentations as to such surface conditions. We are thus brought to the consideration of whether the court rightly found that the second of the above charges was sustained by the evidence. Appellant contends that the equitable relief of rescission, being extraordinary, should never be granted, except where the evidence is clear and convincing. For the purposes of this appeal we will concede such to be the proper rule. Was the evidence received so clear and convincing? A complete review thereof could serve no useful purpose. If the court and the jury believed the testimony of the respondents and their witnesses—and from the findings of the court and the jury we must presume they did—they had ample warrant for such findings. If it were the mere weighing of the testimony of the witnesses upon the one side as against that of those upon the other without any undisputed facts to aid in determining the truth or falsity of such contradictory testimony, there would be some grounds for appellant's contention that the evidence was not clear and convincing; but there are many facts revealed by the evidence herein and which stand undisputed by appellant, some of them established by his own testimony and that of his witnesses, that tend to show a fraudulent purpose on the part of appellant and his agents throughout this whole transaction, and that otherwise tend to corroborate respondents and their witnesses. Appellant sent an agent, one Corkin, to examine the stock of hardware and to show the land to respondents. There was a loan of $2,450 secured on the land, and respondents advised Corkin that, if they made the trade, they would have to borrow some $2,000 more on said land in order to pay their creditors. Corkin took from them an application for a loan, and, if he did not agree that appellant should procure the loan, he at least encouraged them to believe that appellant, through his bank, would procure this additional loan. Appellant knew of this before the deal closed, and yet did not advise

respondents that such a loan could not be procured, but, in fact, on the very eve of the consummation of the exchange, by letter written to respondents' agent, encouraged them to believe the loan would be procured. The evidence conclusively shows that the land offered in trade was of such little value that appellant, a banker, must have known he could not procure a loan of $4,500 thereon. The court found the land to be worth but $5,600. Appellant was advised that respondents would not make the trade unless the "land is good," and that respondents "have been prejudiced against some of the land in that part of the state on account of the rough and stony land, but perhaps your 280-acre farm is not of that kind." He instructed a second agent, whom he employed to take Corkin and respondents to examine this land, as follows:

"Take them out to see the land and show it up the best you can. Keep away from the stone as much as possible and do the best you can."

The evidence on the part of respondents tended to show that appellant's agent willfully directed one of the respondents and one Carlson, who accompanied him on the trip to see the land, to the wrong land, representing that a certain line that was, in fact, the east line of a part of the land offered in trade was the west line thereof, thus causing respondent and Carlson to examine land one-half mile east of the land traded for. The undisputed evidence shows this other land to be fairly level, fairly free from rock, with from 200 to 230 acres thereof subject to breaking by traction power, and further shows that this land was worth about 50 per cent. more than the land actually covered by the contract and actually conveyed. Appellant's agents denied that the wrong land was pointed out, but their testimony shows that the respondent and Carlson spent a great, if not the greater, portion of the time given to examination of land on the land which respondents claim was pointed out to them as the land of appellant. Respondent and Carlson testified that they examined no part of the land afterwards conveyed to respondents. The party whom appellant employed to show the land, when testifying as a witness for appellant, testified that, when he noticed respondent and Carlson going over onto land other than that belonging to appellant, he said to Corkin, "They are getting off the land now," and that Corkin answered, "To hell with them; let them go; I am pretty nearly

frozen." Common honesty required these agents to advise respondent of his mistake, when such mistake was evident, even if it were true that they had not brought about such mistake through misrepresentation. Deceit can consist in silence when honesty requires speech, as much as in speech itself. Section 1201, C. C. After Corkin had reported his trip to appellant, appellant wrote respondents that Corkin's report as to the hardware stock and location were favorable, that "it is just what we want." Appellant was familiar with the land, and yet, in this letter, he wrote the following, which he must have known was false, and which the court and jury might naturally conclude was written because he knew that respondent had examined land better than his:

"It is rolling just enough, and the few rocks that are on it can be removed at a very small cost. When that farm is fenced and broke up, with some buildings upon it, it will be equal to any in the country."

The evidence clearly shows that appellant's land was too stony to make removing stone practicable; that, owing to stone and roughness, not over 40 to 50 acres of the 280 could be broken, and this in very small pieces. It is hard to believe that appellant would have written the above if he knew the right land had been examined by respondents. When respondents discovered that they had been shown the wrong land, they immediately notified appellant. He admitted upon the witness stand that Carlson advised him that respondents claimed to have been shown the wrong land, and that he promised to investigate the matter. Without reporting to respondents the result of his investigation, we find the next move of appellant to have been the giving of a bill of sale of the hardware stock to a third party—his coappellant herein. Respondents claimed their stock of goods to have been worth $12,000. The court found it worth $8,000. Appellant does not question but that it would invoice, at wholesale prices, $12,000, but claims it was, in fact, worth to exceed $4,000. Yet we find appellant naming $12,000 as the consideration in a bill of sale which he gave to his coappellant. This is explained upon the theory that the grantee desired the sum of $12,000 inserted instead of $4,250, the amount claimed to be the actual consideration, so that it would aid such grantee in trading the stock. We apprehend the court and jury were inclined to treat with grave sus-

picion the testimony of parties who were confessedly guilty of the above practices. The evidence, when viewed as a whole, was, to our minds, most clear and convincing in favor of respondents.

[6, 7] Appellant urges that the court failed to find all the elements of deceit, and that for that reason the findings do not support the conclusions and judgment. Appellant contends the court failed to find: That the representations were known by appellant to be false; that respondents were ignorant of the truth; that the representations were made with intent that they should be acted upon and with a view of deceiving respondents; and that the plaintiffs were injured or damaged. The court found: That respondents had no previous knowledge of the land; that they relied upon appellant to show them the land; that appellant did assume to show them the land; that "for the express purpose of deceiving and defrauding plaintiffs, and to cheat and defraud them out of their property, defendants wrongfully, unlawfully and knowingly took plaintiffs upon and did show them other and different land, * * * and showed them a different tract of a better appearance and quality than the land thereafter conveyed to them"; "that plaintiffs * * * were obliged to and did rely upon the defendant Harris and his representatives and agents as to the * * * location and boundaries of said land, and so stated to said defendant Harris, and said plaintiffs would not have entered into said exchange except for the statements and representations of said defendant Harris and his agents with relation to said land." It thus clearly appears that every element constituting such deceit as will warrant rescission of a contract was found by the trial court. This being an action seeking rescission and not damages, a finding that respondents were injured or damaged was not essential.

[8] Appellant complains that it does not appear that respondents have ability to restore what they received. Before action brought, they tendered a deed to the land subject to the mortgage against it. They kept this tender good up to the trial, and then filed such deed in court. The court has decreed that such deed be delivered to appellant when he pays to respondents the adjudged value of the stock of goods. Appellant, however, contends that there is nothing to show but what respondents may have incumbered the title they received from appellant. The law creates a presumption, within logical limits, that a fact of a con-

tinuous nature continues to exist at a subsequent time. Yankton Nat. Bk. v. Benson, 33 S. D. 399, 146 N. W. 583. This rule applies to the title to property, and this presumption, though disputable, if not changed by evidence, becomes indisputable so far as the pending action is concerned, and should be so treated by the court. Kidder v. Stevens, 60 Cal. 414. We do not think that from the time respondents received title from appellant sufficient time elapsed to destroy the presumption that the title remained unchanged.

[9] As hereinbefore noted, this was an action seeking a rescission of an executed contract. It was not an action based upon a rescission. In framing its findings of fact and judgment, the trial court would seem to have considered this action an action for damages based upon a rescission. The court found the tender of a deed of reconveyance, but omitted to find that such deed was deposited in court, though that fact stood uncontradicted. In its judgment the court apparently assumed that title to the land had again vested in appellant because, without decreeing a rescission and providing for the delivery of the deed upon payment of the amount adjudged in favor of respondents, it merely rendered a money judgment for the value of the stock of hardware. Upon the motion for new trial appellant urged the inequity of such judgment—a money judgment for the full value of the stock of goods, and with no provision by which appellant would become reinvested with the title to the land. Their attention being thus called to this situation, respondents moved the court to add to its findings a finding that the deed had been tendered and deposited in court, and to so change the wording of the judgment that it would adjudge that, upon payment of the amount found due respondents, appellant should be entitled to a reconveyance of the land and to a delivery of the deed deposited in court. Such motion was granted, the findings and judgment were so changed nunc pro tunc, and a new trial denied.

Appellant now complains of this action of the trial court in thus amending the findings and judgment. He concedes the power of a court to change the wording of a judgment to make it conform to the real intent of the court, so that it may speak the real judgment of such court; but he claims that this is the making of a new and different judgment from the one actually

rendered, and at a time when the power of the court to amend
the judgment had passed. We think the action of the trial court
should be sustained upon the ground that the judgment as finally
rendered but speaks the real judgment of the court as evidenced
by the whole record: The action was one seeking rescission; in
its findings the court found that notice of rescission was given
and tender of deed made, and that, to avoid the proposed rescis-
sion, appellant had conveyed the stock of hardware to his co-
defendant; in its conclusions of law the court found that "plain-
tiffs are entitled to a rescission of said exchange as a matter of
law." If we were to concede appellant's contention to be sound,
it would be our duty to remand the cause to the trial court, with
directions to make a finding upon the question of the deposit of
the deed in court; with the further direction, in case it found such
deed was deposited (a fact absolutely undisputed), to enter the
very judgment it has now entered.

There are no other assignments meriting discussion.

The judgment and order appealed from are affirmed.