Bill VERMILYEA and Jan Vermilyea,
d/b/a Cost Cutters, Plaintiffs
and Appellants,

v.

BDL ENTERPRISES, INC.,
Defendant and Appellee.

Nos. 16760, 16763.

Supreme Court of South Dakota.

Argued Jan. 10, 1990.

Decided Nov. 14, 1990.

George Beal, Rapid City, for plaintiffs and appellants.

Ronald R. Johnson, Lemmon, for defendant and appellee.

RONALD K. MILLER, Circuit Judge.

Bill and Jan Vermilyea (Vermilyeas), are tenants in the Twin City Shopping Mall (Mall) in Lead, South Dakota. They brought an action for judicial rescission of a twenty-year-term lease they executed for space in the Mall being developed by BDL Enterprises, Inc. (BDL). If rescission was denied, Vermilyeas alternatively sought to have the term of the lease revised to a five-year term at the same lease rental.

The trial court denied Vermilyeas' request for judicial rescission of the lease while granting the alternative relief of revision of the lease term. It revised the term of the lease to fifteen years instead of the five years requested by Vermilyeas. The trial court concluded that the Vermilyeas' consent to a twenty-year-lease term was obtained by the mistake of Vermilyeas or fraud practiced upon them by BDL. The court held that rescission was the more severe of the two remedies and was not justified under the circumstances; revision was more appropriate under the facts. We reverse.

The Vermilyeas appeal from the trial court's final order asserting as error the following:

(1) The trial court's revision of the twenty-year-lease term to a fifteen-year-lease term instead of a five-year-lease term; and

(2) The trial court's denial of their request for judicial rescission of the twenty-year-term lease.

BDL asserts that no relief should have been granted the Vermilyeas.

## FACTS

BDL is a South Dakota corporation with principal offices in Lemmon, South Dakota. It is engaged in the development and management of commercial real estate. BDL is the owner of the Mall. Lynn Feist (Feist) is a fifty percent stockholder in BDL and is its secretary-treasurer.

Rod Galland (Galland) is the owner and chief executive of Galland & Associates, Inc. (Galland & Associates). BDL hired him to be its agent to negotiate lease commitments from prospective Mall business tenants. Rick Lockhart (Lockhart) worked for Galland & Associates from December 1985 through April 1, 1986.

The Vermilyeas operate two beauty salons in Rapid City and one in Lead pursuant to fifteen-year-term license agreements with Cost Care Hair Centers, a franchise operation. The Vermilyeas entered into a separate fifteen-year licensing agreement for each shop, which they operate as individual proprietorships.

In the fall of 1984 BDL began plans to develop a shopping mall in Lead in conjunction with a necessary move of the Piggly Wiggly grocery store from a Homestake Mining site. Jan Vermilyea (Jan) first heard about the possibility of the Mall over the radio in October 1985. She consulted her husband, Bill, and the two decided that they were interested in locating a Cost Cutters Salon in the Mall, if it was constructed. Jan was generally acquainted with Feist and contacted him in November 1985 about the possibility of opening a Cost Cutters operation in the Mall. Feist advised her that he would have someone from BDL contact her.

Lockhart, working under the direction of Galland, contacted Jan in December 1985 and they had a general discussion since the Mall was only in the preliminary stages. A second meeting with Lockhart took place in the latter part of December 1985 when both Jan and Bill were present. During this meeting, the Vermilyeas told Lockhart about the lease terms for their two Rapid City salons and advised him that they also wanted a five-year-lease term with a five-year-renewal option for the Mall. Lockhart told Vermilyeas that the Mall's financing arrangements required that every tenant have a twenty-year-lease term. Lockhart further mentioned that if they were interested a letter of intent to lease space would be forthcoming.

Jan received the letter of intent to lease space in the Mall in early January of 1986. Lockhart visited Jan again later in January and asked her to sign the letter of intent. Jan resisted signing the letter of intent and objected to the twenty-year-lease term it contained. Lockhart told Jan that the letter of intent was not binding upon her, but it was needed to obtain financing for the Mall. She could determine later whether she wanted to open an outlet in the Mall. Bill was not present at this time. After further meetings with Lockhart, Bill signed the letter of intent in February 1986 after objecting to the twenty-year-lease term and being assured by Lockhart that all tenants of the Mall, because of financing requirements, had to sign twenty-year, non-negotiable, lease terms.

From the time BDL began putting the financial package together for the Mall, and until February 19, 1986, BDL instructed Galland & Associates to attempt to obtain lease commitments for twenty-year terms; if prospective tenants refused, Galland & Associates was instructed to search for prospects who would sign twenty-year leases. BDL wanted to use the twenty-year leases as collateral. If a sufficient number of twenty-year leases could not be obtained, BDL would have to provide other security, such as personal guarantees, for the permanent financing. In late 1985 or early 1986, Galland & Associates informed BDL that prospective tenants were objecting to twenty-year leases. On February

19, 1986, BDL abandoned the twenty-year requirement for small tenants, and negotiated shorter term leases at higher rental cost in order to fill the Mall.

In April or May 1986, Jan Vermilyea was advised that Lockhart was leaving the employ of Galland & Associates and that Galland would be calling on her from then on. Galland kept in contact with Jan by stopping in her Rapid City salon frequently. On July 1, 1986, the Vermilyeas signed a retail lease which BDL signed later in July 1986. This lease did not contain a lease term or monthly rental rate. Jan signed an amendment to the retail lease on March 17, 1987, which defined the rentable area of the leased premises, the twenty-year term of the lease, and the minimum rent. Notwithstanding the February 19, 1986, change in negotiating guidelines for small tenants, neither BDL nor Galland & Associates informed the Vermilyeas that the twenty-year lease term requirement had been abandoned prior to them signing the retail lease or amendment to retail lease. Prior to this time, when the Vermilyeas were told all leases had to be for twenty-year lease terms, this was in fact true.

The Vermilyeas obtained a fifteen-year-license agreement from Cost Cutters for the Twin City Mall location on May 1, 1987, and opened for business on May 16, 1987. The Vermilyeas had not consulted legal counsel to advise them about the contents of the license agreement or Mall lease. Instead, they relied upon the information furnished and statements made to them by BDL and Galland & Associates. Vermilyeas were told that the twenty-year-lease term was a financing requirement and not negotiable. Although they never wanted a twenty-year lease and attempted to obtain a five-year lease, they nevertheless signed the twenty-year-lease agreement because they believed there was no choice since that was what BDL required.

On January 20, 1988, Bill learned from another Mall tenant that at least one other tenant in the Mall had a lease for less than twenty years. The Vermilyeas immediately wrote a letter to BDL and Galland demanding that their lease term be reduced to five years. They met about this letter with Feist and Galland in early February 1988. At this meeting the Vermilyeas first learned that the twenty-year-lease requirement had been eliminated. Bill demanded that they be given the five-year lease they had asked for prior to the abandonment of the twenty-year requirement and said they should have been informed of the requirement change before they signed the Mall leases. BDL refused to renegotiate the lease term. Only two other retailers in the Mall signed twenty-year leases. These two retailers were the major tenants in the Mall, one of which had requested a twenty-year lease. Letters of intent for lease terms of less than twenty years were being negotiated prior to July 1, 1986, with prospective tenants other than the Vermilyeas. None of these tenants, in Vermilyeas' size class, signed twenty-year leases.

## ISSUE I
WHETHER THE TRIAL COURT ERRED IN REVISING THE MALL LEASE FROM A TWENTY–YEAR TERM TO A FIFTEEN–YEAR TERM AT THE SAME RENTAL COST WITH TWO OPTIONS TO RENEW THE LEASE FOR FIVE–YEAR PERIODS?

In this case, neither Vermilyeas nor BDL ever mentioned a fifteen-year-lease term. Vermilyeas wanted a five-year-lease term and were told that they could not have this because permanent financing required twenty-year-lease terms. The parties never agreed to a five-year-lease term. It was the intent of both parties to enter into a twenty-year lease.

■ SDCL 21–11–1 provides in part that "[w]hen through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention...." In *Teutsch v. Hvistendahl*, 72 S.D. 48, 52, 29 N.W.2d 389, 391 (1947), this court cited 5 Williston *Contracts* § 1549 (Rev.Ed.) for the proposition that "if, be-

cause of mistake as to an antecedent or existing situation, the parties make a written instrument which they might not have made, except for the mistake, the court cannot reform the writing into one which it thinks they would have made, but in fact never agreed to." As stated in *Clark v. Bergen*, 75 S.D. 48, 53, 59 N.W.2d 250, 252 (1953), "The court only reforms and does not undertake to make a contract for the parties."

■ Here the mistake or fraud, if any, was in the making or inducement of the contract. By revising the lease to fifteen years the trial court attempted to make a contract it thought the parties would have made, if not for the mistake. Neither this court, nor the trial court can make a contract for these parties, whether it be for five years or fifteen years. In so doing the trial court committed reversible error. The Vermilyeas' remedy is rescission, not reformation.

## ISSUE II
WHETHER THE TRIAL COURT ERRED IN DENYING VERMILYEAS THE REMEDY OF RESCISSION OF THEIR TWENTY-YEAR LEASE WITH BDL?

The Vermilyeas do not challenge the sufficiency of the evidence to support the trial court's findings of fact. They allege that the facts found by the court when applied to the rules of law concerning judicial rescission do not support the court's conclusions of law and judgment denying them the remedy of judicial rescission.

■ The equitable relief of rescission, being extraordinary, should never be granted, except where the evidence is clear and convincing. *Windedahl v. Harris*, 37 S.D. 7, 156 N.W. 489 (1916). An appellate court in an equity case is required to read all the evidence produced, and give consideration to all facts and circumstances in evidence, as shown by the record. 5 C.J.S. *Appeal and Error* § 1462 (1958). We review the trial court's conclusions and judgment based upon the evidence of the case, and upon the facts as found by the trial court,

and the rules of law concerning judicial rescission.

■ The Vermilyeas never wanted a twenty-year lease and this was communicated to BDL in the early stages of negotiation over the lease. The Vermilyeas' Cost Cutter license was for fifteen years, and they wanted a lease with a five-year term and a five-year option that was the same as their Rapid City salon leases, and which would not exceed the license term. They were, however, willing to sign a twenty-year lease if that was what was required by BDL. Vermilyeas were laboring under the mistaken belief that this was required by BDL, and believed that their only choice was signing a twenty-year lease or foregoing the opportunity to open their shop in the Mall.

Three separate statutes of this state are applicable to the facts of this case. SDCL 53–11–2, in pertinent part, provides that "a party to a contract may rescind the same ... [i]f [the] consent of the party rescinding ... was given by mistake or obtained through ... fraud ... exercised by or with the connivance of the party as to whom he rescinds...." SDCL 53–4–2 provides that "[c]onsent is deemed to have been obtained through ... fraud ... or mistake, only when it would not have been given except for one or [both] of them." SDCL 53–4–9 provides that a "mistake of fact is a ... [b]elief in the present existence of a thing material to the contract which does not exist...."

The import of these statutes was explained in *Dolan v. Hudson*, 83 S.D. 144, 153–154, 156 N.W.2d 78, 83 (1968), where this court stated that

In *Beatty v. Depue*, 78 S.D. 395, 103 N.W.2d 187, this court recognized that a unilateral mistake of a material fact is ground for rescinding a contract under our statutes where consent to the contract is mistakenly given. However, the court further said the mistake had to be so fundamental in character that because of it the minds of the parties did not meet. The following test of materiality was quoted with approval from *Grymes v. Sanders*, 93 U.S. 55, 23 L.Ed. 798 [1876]: 'A mistake as to a matter of fact,

to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The court must be satisfied, that but for the mistake the [complaining party] would not have assumed the obligation from which he seeks to be relieved.'

The evidence in this case clearly and convincingly establishes that the Vermilyeas would not have consented to the twenty-year lease, but for their mistake. The Vermilyeas were laboring under a belief in the present existence of a thing material to the contract which did not exist. They were mistaken as to the requirement of a twenty-year-lease commitment. Certainly, a twenty-year-lease as opposed to a five-year-lease is material, and not merely incidental. The materiality of the mistaken fact, the twenty-year-lease term requirement, is evidenced by the Vermilyeas' repeated objections to it. This mistake controlled their conduct. The evidence and the trial court's findings clearly support this. The trial court found that had the Vermilyeas refused a twenty-year-lease it is quite possible that they would have either negotiated a shorter term lease or would have lost the lease space to another tenant. No other small tenants, such as the Vermilyeas, signed a twenty-year-lease, and the Vermilyeas have clearly stated and shown that they would not have done so but for their mistake. This conclusion is further evidenced by the fact that the Vermilyeas had five-year leases on their two established Cost Cutters salons located in Rapid City where they resided, and by the fact that the Mall contained other unleased spaces at the time negotiations to lease were taking place, and that negotiations for lease terms of less than twenty years were taking place at this time with prospective tenants other than the Vermilyeas. None of these tenants, in Vermilyeas' class size, signed twenty-year leases.

The remaining elements that the Vermilyeas had the burden of clearly and convincingly proving were that they attempted with reasonable diligence to promptly rescind upon discovering facts entitling them

to rescind, SDCL 53–11–3 and SDCL 53–11–4, and that they have offered to restore or have restored to BDL everything of value which they received from BDL under the contract, SDCL 53–11–5.

The trial court specifically found that Vermilyeas acted diligently upon discovering facts entitling them to rescind. BDL refused the Vermilyeas' demands for modification or rescission of the lease and forced them to seek judicial rescission. The Vermilyeas have offered to substantially restore BDL to the status quo by giving back the leased premises in the event that the lease is rescinded by this court. It is impossible to place BDL in the exact status quo by turning back the time clock to restore the leased space to BDL on the date the lease documents were executed and the law does not require this. A substantial restoration is all that is required. 12A C.J.S. *Cancellation of Instruments* § 54 (1980). In the event that the Vermilyeas have paid all monies due under the lease to the date of this decision and comply with remaining lease terms not made impossible or unnecessary by rescission, the return of the leased premises to BDL will accomplish substantial restoration.

The record and the facts found by the trial court support its conclusion that but for the Vermilyeas' mistake, they would not have consented to a twenty-year-lease term. The trial court did not reach the right result, however, when it denied Vermilyeas the remedy of rescission based on their mistake, and it erred in so doing. For this reason, we must reverse the trial court's decision and grant Vermilyeas the remedy of rescission of the twenty-year-lease.

The judgment of the trial court is reversed.

MILLER, C.J., and MORGAN, HENDERSON and SABERS, JJ., concur.

ROBERT K. MILLER, Circuit Judge, for WUEST, J., disqualified.