1999 SD 51

**Jon W. MATTSON and Barbara Mattson, Plaintiffs and Appellees,**

**v.**

**Jerry C. RACHETTO and Joan Rachetto, Defendants and Appellants.**

No. 20543.

Supreme Court of South Dakota.

Considered on Briefs Feb. 24, 1999.

Decided April 21, 1999.

James S. Nelson and Paul S. Swedlund of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for plaintiffs and appellants.

Jerry C. Rachetto, Deadwood, for defendants and appellants.

GILBERTSON, Justice.

[¶ 1.] Jon W. Mattson and Barbara Mattson (the Mattsons) filed suit against Jerry C. Rachetto and Joan Rachetto (the Rachettos) for rescission of a land contract. The Rachettos counterclaimed. Cross-motions for summary judgment were filed on all issues. The circuit court granted the Mattsons' motion for summary judgment on the Rachettos' counterclaims and the Mattsons' motion for summary judgment on their complaint for rescission. Evidentiary hearings on equitable adjustments and costs were held and the trial court entered its written findings of fact, conclusions of law and judgment. The Rachettos appeal. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] Jon and Barbara Mattson are husband and wife. Jerry and Joan Rachetto are husband and wife. Jerry Rachetto and Barbara Mattson are brother and sister. Additionally, Jon Mattson and Jerry Rachetto are both attorneys who shared a law office in Deadwood. The general facts are below, other relevant facts will be included in the respective issues.

[¶ 3.] In 1974 when Jerry Rachetto returned to Deadwood from law school, he went to work for Jon Mattson. He later expressed a desire to build a house on Tract A of the Mattson Ranch. The Mattsons deeded Tract A to Jerry and Joan Rachetto. Tract A consisted of 1.837 acres. No money was paid for this land. The Mattsons also gave the Rachettos an easement through their ranch property so the Rachettos could access their house from the highway. The easement passed through Tract C and the Ray Placer Sub-division.

[¶ 4.] In 1984, the Rachettos approached the Mattsons about buying Tract C so they could have a buffer zone between Rachettos' property and the Ray Placer Sub-division to ensure no future development adjacent to the Rachetto home. Tract C was composed of approximately eighteen (18) acres. The Mattsons were willing to sell Tract C but not without a specific leaseback provision that allowed them to cultivate hay and graze livestock on the tract for their lifetime. The Mattsons sold Tract C to the Rachettos for the consideration of $26,959.50 and the agricultural leaseback. The Mattsons also agreed to reimburse the Rachettos for the real property tax levied against the property for the term of the agricultural lease.[1] The price charged was far less than the value of other lots on the ranch.

[¶ 5.] After several drafts of the agreement, the parties agreed to the terms for the sale. Neither party knew or realized the agricultural lease was void under SDCL 43–32–2.[2] In 1996, Jerry Rachetto came across the decision of *Commercial Trust & Sav. Bank v. Christensen*, 535 N.W.2d 853 (S.D. 1995), in which we interpreted part of SDCL 43–32–2. The Rachettos, without informing the Mattsons of this discovery, erected an electric fence around Tract C. The Mattsons did not discover the mistake until the Rachettos put up the electric fence. Jerry Rachetto, when confronted, brought the *Christensen* case to the Mattsons' attention.

[¶ 6.] When the Mattsons learned the agricultural lease was invalid as a matter of law, they attempted to negotiate some type of compromise. All offers were rejected by the Rachettos, as they wanted to use the land for their own purposes.[3] The Mattsons attempted to tender rescission offering the purchase price plus interest. The Rachettos refused.

[¶ 7.] The Mattsons then filed a complaint for rescission of the land contract. The Rachettos counterclaimed raising various issues concerning Tract C and issues over other lands in the area owned by the Mattsons. Cross-motions on summary judgment were filed on all issues. The trial court granted the Mattsons' motion for summary judgment on the complaint for rescission and also summary judgment dismissing Rachettos counterclaims. Evidentiary hearings on equitable adjustment and costs were held. The Rachettos appeal raising seven issues, of which we will consider two.

1.  Whether the trial court erred or abused its discretion in granting the Mattsons' motion for summary judgment on their claim for rescission.

2.  Whether the trial court erred or abused its discretion in not setting interest pursuant to statutory interest rates applicable to damages.[4]

### STANDARD OF REVIEW

[¶ 8.] Our standard of review for a trial court's grant of a motion for summary judgment is well settled. As we recently stated in Estate of *Shuck v. Perkins County*:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and

---

1.  A map of the area in dispute is attached.

2.  SDCL 43–32–2 states:

    No lease or grant of agricultural land for a longer period than twenty years ... shall be valid.

3.  Jerry Rachetto has built a golf course green and tee box on the property. The Rachettos claim the Mattsons wanted the property back because of its significant increase in value. They allege the Mattsons want to sub-divide the property and make a significant profit.

4.  Rachettos have raised numerous other issues on appeal. As they are without merit we decline to address them. In so doing we cite approvingly the observation of the court in *State v. Waste Management of Wisconsin, Inc.*, 81 Wis.2d 555, 261 N.W.2d 147, 151 (1978), *cert. den. Waste Management of Wisconsin, Inc. v. Wisconsin*, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 175 (1978) "[a]n appellate court is not a performing bear, required to dance to each and every tune played on an appeal.... Any of the ... issues raised and not discussed ... can be deemed to lack sufficient merit or importance to warrant individual attention."

the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586 (1998) (citations omitted). "Summary judgment is a preferred process to dispose of *legally unmeritorious* claims." *Kobbeman v. Oleson,* 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635 (emphasis added) (citing *Horne v. Crozier,* 1997 SD 65, ¶ 5, 565 N.W.2d 50, 52; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986)).

▇▇▇ [¶ 9.] For equitable remedies, this Court's standard of review is abuse of discretion by the trial court after reviewing the facts and circumstances of the case. *Amdahl v. Lowe,* 471 N.W.2d 770, 773 (S.D.1991) (citing *Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D.1985); *Dolan v. Hudson,* 83 S.D. 144, 156 N.W.2d 78, *aff'd on rehearing,* 83 S.D. 331, 159 N.W.2d 128 (1968)). "We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." *Gilkyson v. Wheelchair Express, Inc.,* 1998 SD 45, ¶ 6, 579 N.W.2d 1, 3.

### ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court erred or abused its discretion in granting the Mattsons' motion for summary judgment on their claim for rescission.**

[¶ 11.] The Rachettos claim the trial court erred or abused its discretion in allowing summary judgment on the Mattsons' count for rescission of the 1984 land sale. They claim the Mattsons do not need the land for agricultural use but instead want it back because of its significant increase in value and their desire to sub-divide the land. The Rachettos also claim the Mattsons should not be allowed rescission because they come before the court with unclean hands as the Mattsons have an obvious, devious motive. The Rachettos claim these are genuine issues of material fact that should preclude summary judgment.

[¶ 12.] *a. Rescission.*

[¶ 13.] SDCL 21–12–1 provides:

The rescission of a written contract may be adjudged on the application of a party aggrieved:

(1) In any of the cases mentioned in § 53–11–2[.]

SDCL 53–11–2 creates grounds for rescission:

A party to a contract may rescind the same in the following cases only:

(1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake . . . ;

(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

(3) If the consideration becomes entirely void from any cause;

(4) If such consideration before it is rendered to him fails in a material respect from any cause[.]

[¶ 14.] The Mattsons argue that SDCL 53–11–2 provides three separate justifications for rescission of the contract. First, they claim rescission is permissible due to a mistake of law. The Mattsons contend both parties made a mutual mistake of law—the lifetime agricultural leaseback in the contract. Second, they claim rescission is appropriate because the illegality of the agricultural leaseback provision of consideration renders the contract void under SDCL 53–6–5[5] and SDCL 53–6–6.[6] As we agree that rescission is permissible due to mistake of

---

**5.** SDCL 53–6–5 states:
The consideration of a contract must be lawful. . . .

**6.** SDCL 53–6–6:

If any part of a single consideration for one or more objects or of several considerations for a single object is unlawful, the entire contract is void.

law, we will not consider the Mattsons' second claim.

[¶ 15.] *b. Mistake of Law.*

■ [¶ 16.] The Mattsons claim that both parties made a mistake of law as defined in SDCL 53–4–10. This provision states:

A mistake of law in relation to consent to contract constitutes a mistake resulting in voidable consent only when it arises from:

(1) A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law[.]

■■ [¶ 17.] "The equitable relief of rescission, being extraordinary, should never be granted, except where the evidence is clear and convincing." *Vermilyea v. BDL Enterprises, Inc.*, 462 N.W.2d 885, 888 (S.D. 1990) (citing *Windedahl v. Harris*, 37 S.D. 7, 156 N.W. 489 (1916)). In an equity case, we are required to read all the evidence produced and give consideration to the facts and circumstances in the record. *Id.*

[¶ 18.] The Mattsons had worked very hard over the years to build up their family ranch. They only acquired title to Tract C after a long struggle with the federal government. Tract C was the best hay and watering ground they had for their livestock. They sold Tract C to their relatives, the Rachettos, only because the Rachettos were close relatives, expressed their concerns over the encroaching sub-division and because they assured the Mattsons via the agricultural leaseback provision they could continue to graze cattle. It is quite clear that the Mattsons would not have sold Tract C at this price if they were not assured the use of the land via the agricultural leaseback. Tract C was the Mattsons' best grazing and hay land which is exhibited by the fact that after they were denied access to Tract C, the Mattsons were forced to purchase hay to feed their cattle.

[¶ 19.] Although there clearly was a mistake of law neither side took advantage of the other. Both parties admitted they did not know the agricultural leaseback was illegal. Mattson and Rachetto were licensed attorneys working in the same office who negotiated the terms of the agreement in good faith which went through several drafts before becoming acceptable to all parties.

■ [¶ 20.] The mere fact the statute is a public record is not the controlling factor in this case. *Home Bldg. & Loan Ass'n v. Perpetual Sav. & Loan, Ass'n,* 338 N.W.2d 456, 459 (S.D.1983). It is a statutorily recognized exception to the old axiom "ignorance of the law is no excuse." Freedom from negligence is not a requirement to invoke the mistake of law claim provided by SDCL 53–4–10. *Home Bldg. & Loan,* 338 N.W.2d at 459. A mutual mistake or "misapprehension of the law by all parties, all supposing that they knew and understood it" generally presupposes negligence as the law is a public record and citizens are charged with knowledge of its requirements.

■ [¶ 21.] The Rachettos present two arguments in their defense. First, they claim the Mattsons should be refused the equitable remedy of rescission because of unclean hands. They allege the Mattsons do not want Tract C for grazing land at all but instead to sub-divide and profit from the sale of lots. There is no evidence of this in the record. Furthermore, this allegation is questionable as the Mattsons offered to contractually bind themselves to only use the land for agricultural purposes.

■ [¶ 22.] Second, the Rachettos claim the land contract was in reality two separate distinct subject matters each supported by separate consideration. The first subject matter was the sale of Tract C for $26,959.50. The second subject matter was the agricultural leaseback for which the rent would be the payment of the annual real estate taxes. Rachettos argue that because there are two separate subject matters, the trial court should only have severed the contract and rescinded the void agricultural lease and not rescinded the entire contract. They claim the contract was divisible and each part was supported by separate consideration.

[¶ 23.] The Rachettos point to *Christensen* as support for this proposition. 535 N.W.2d 853. In *Christensen,* we said "a distinguishing mark of a divisible contract is that the

consideration is not single, but can be apportioned to correspond with separate consideration offered by the other party." *Id.* at 857. (Citation omitted).

[¶ 24.] The language of the contract clearly tells us it is not divisible.

1) For and in consideration of the sum of Twenty-six Thousand Nine Hundred Fifty-nine Dollars and Fifty Cents ($26,959.50), Mattsons agree to convey by Warranty Deed to Rachettos [Tract C]:

\* \* \*

2) For and in consideration of the agreement by Mattsons to sell the above-described property to Rachettos, Rachettos hereby lease to Mattsons the above-described property.

[¶ 25.] Rachettos argument on this issue is without merit. The trial court restored the parties to where they were before they made their contractual mistake. The trial court did not abuse its discretion in righting a wrong caused by a mutual mistake of law. As there is no genuine issue of material fact, we affirm.

[¶ 26.] **2. Whether the trial court erred or abused its discretion in not setting interest pursuant to statutory interest rates applicable to damages.**

■■■ [¶ 27.] Following rescission of the contract the trial court ordered the Mattsons to repay Rachettos the purchase price of Tract C, $26,950.50 and pay an additional $24,212.69 in interest. The court awarded interest based upon the prevailing interest rates in government securities. The Rachettos allege the trial court erred by not using the statutory interest rate of 12% applicable to prejudgment interest on damages under SDCL 54–3–5 or in the alternative the interest rate under SDCL 21–1–13.1. We do not agree as both of these statutory rates do not apply in cases of equitable adjustment.

[¶ 28.] SDCL 54–3–5 [7] is not applicable to this case as it deals with the concerns of debtors and creditors. SDCL 21–1–13.1 [8] also is not applicable as it relates only to actions for damages. This is not interest on damages. Under our Code damages are allowed when:

[A] person who suffers detriment from the unlawful acts or omission of another may recover from the person in fault a compensation therefor in money, which is called damages. Detriment is a loss or harm suffered in person or property.

SDCL 21–1–1. This is not the case here as the Rachettos' have not suffered from an unlawful act or omission of the Mattsons. The Rachettos arguments are entirely without merit and therefore we affirm the trial court's award. [9]

[¶ 29.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

---

7. SDCL 54–3–5:

**Interest on moneys after they become due—Express contracts excepted.** Unless there is an express contract in writing fixing a different rate, interest is payable on all moneys at the Category F rate of interest as established in § 54–3–16 after they become due on any instrument of writing, and on moneys lent, or due on any settlement of accounts, from the day on which the balance is ascertained, and on money received to the use of another and detained from that other.

Under SDCL 54–3–16, the statutory interest rate under Category F is 15% per year.

8. SDCL 21–1–13.1:

Any person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt. Prejudgment interest is not recoverable on future damages, punitive damages or intangible damages such as pain and suffering, emotional distress, loss of consortium, injury to credit, reputation or financial standing, loss of enjoyment of life or loss of society and companionship. If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict or, if there is no verdict, the date the judgment is entered. If necessary, special interrogatories shall be submitted to the jury. Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate specified in § 54–3–16. The court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs.

9. Although Mattsons in their brief question whether any interest should have been awarded, they did not file a notice of review on this issue.

**AND TRACTS B & C, A SUBDIVISION OF LOT 2 OF**
ALL LOCATED IN T5N R3E, B.H.M. LAWRENCE COUNTY, SOUT

We note in *Beitelspacher v. Winther*, 447 N.W.2d 347, 354 (S.D.1989) concerning an equitable adjustment such as occurred here, we refused to allow interest on principal payments made on a contract for deed which was subsequently foreclosed (citing *Dow v. Noble*, 380 N.W.2d 359, 360 (S.D.1986)). In *Beitelspacher* and *Dow*, the party seeking the interest was unable to cite to any statute which authorized such an award.