Richard HAFNER, Plaintiff
and Appellant,

v.

Lynn DELANO, Individually and as Secretary of the South Dakota Department of Charities and Corrections; South Dakota Department of Charities and Corrections [sic] South Dakota Department of Corrections; Walter Leapley, Individually and as Warden of the South Dakota State Penitentiary; Beverly Armstrong, R.N., [sic] (Armfield), Individually and as an Agent of the South Dakota State Penitentiary; Steve Jacobson, Individually and as an Agent of the South Dakota State Penitentiary; Edward Ligtenberg, Individually and as an Agent of the South Dakota State Penitentiary; Richard Ziegler, Individually and as an Agent of the South Dakota State Penitentiary, Defendants and Appellees,

and

Dr. James Oakland, Individually and as Agent of the South Dakota State Penitentiary; Daniel Blue, M.D., Individually and as an Agent of the State of South Dakota State Penitentiary; David Hoversten, M.D., Individually and as an Agent of the South Dakota State Penitentiary; Larry B. Vanderwoude, M.D., Individually and as an Agent of the South Dakota State Penitentiary; Michael Olson, M.D., Individually and as an Agent of the South Dakota State Penitentiary, Defendants.

No. 18434.

Supreme Court of South Dakota.

Argued March 21, 1994.

Decided Aug. 10, 1994.

Steve Jorgensen, Sioux Falls, for plaintiff and appellant.

Richard J. Helsper and Eric N. Rasmussen of Erickson, Helsper & Rasmussen Brookings, for defendants and appellees.

MILLER, Chief Justice.

Hafner appeals summary judgment granted to prison officials and personnel he sued, claiming that while he was incarcerated in the South Dakota State Penitentiary they were deliberately indifferent to his serious medical needs, thereby violating his Eighth Amendment rights. We affirm.

### FACTS

Richard Hafner was sentenced to the South Dakota Penitentiary in March, 1989, after pleading guilty to the second-degree rape of his fifteen-year-old niece. On or about May 25, 1989, Hafner was attacked by three unnamed inmates.[1] The inmates forced him to his knees, one held Hafner's hands in the air while another kicked him in the back.

Hafner requested medical attention from the penitentiary's health services a few days later and was seen by Nurse Armfield. Hafner told her he had injured his shoulder while playing volleyball. Nurse Armfield examined the shoulder, wrapped it with an ace bandage and gave him a heating pad.

The doctor who examined Hafner on June 23, 1989, found tenderness in the shoulder area, ordered X-rays and referred Hafner to an orthopedic specialist who found a mass in the shoulder. On July 3, 1989, in a same-day surgical procedure, a surgeon drained a hematoma in the shoulder. Hafner was returned to the penitentiary where he claims no personnel checked on his condition, no pain medication was given to him, no meals were brought to his cell, no ice was provided to him, and he was given no post-operative hygienic instructions. He also claims his surgical dressing was not changed in a timely manner.

In September, 1989, Hafner was transferred to the Springfield Correctional Facility to participate in a vocational training pro-

---

1. Prior to the attack, in an effort to cooperate with authorities and obtain a reduced sentence, Hafner had given incriminating testimony against two other inmates. Apparently the attack was retribution for his testimony.

gram. He complained that the vocational laboratory work caused pain in his shoulder when he lifted his tool box. He asserts personnel then refused to release him from the program, thereby causing additional injury to his shoulder.

In January, 1990, Hafner requested protective custody and was transferred back to the penitentiary. In April, 1990, an orthopedic specialist diagnosed Hafner's injury as a torn teres major muscle rather than muscle strain.

Hafner was paroled on January 20, 1991. On April 24, 1991, he filed suit against five doctors, the South Dakota Department of Corrections (Department), and various prison officials and personnel (hereinafter Defendants) alleging both medical malpractice and a 42 U.S.C. § 1983 violation of his rights under the Eighth Amendment of the United States Constitution through deliberate indifference to his serious medical needs. Hafner named Defendants in both their personal and official capacities.

Defendants filed motions for summary judgment. On February 9, 1993, the trial court deferred ruling on the motions and set June 1, 1993, as the deadline for naming expert medical witnesses. When Hafner had not named an expert witness by the deadline, the trial court again delayed ruling on Defendants' motions. On June 4, 1993, the trial court entered summary judgment for all non-doctor Defendants. On June 23, 1993, when Hafner still had not named an expert medical witness, the court granted summary judgment for the Defendant doctors.

Hafner appealed the June 4, 1993, order but failed to file an appeal from the June 23, 1993, order. On November 12, 1993, and December 10, 1993, this Court issued orders granting motions to dismiss Hafner's appeal as to the doctors.

## STANDARD OF REVIEW

▬ In reviewing a grant of summary judgment, we must determine whether the moving party has demonstrated there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Breen v. Dakota Gear & Joint Co.,* 433 N.W.2d 221, 223 (S.D.1988); *Groseth Int'l, Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 164 (S.D.1987); *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Harn v. Continental Lumber Co.,* 506 N.W.2d 91, 94 (S.D.1993); SDCL 15–6–56(c).

▬ The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Groseth,* 410 N.W.2d at 164 (citing *Wilson,* 83 S.D. at 212, 157 N.W.2d at 21; *Trapp v. Madera Pacific, Inc.,* 390 N.W.2d 558 (S.D.1986)). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Affirmance is proper if any basis exists which would support the trial court's ruling. *Breen,* 433 N.W.2d at 223 (citing *Blote v. First Fed. Sav. & Loan Ass'n,* 422 N.W.2d 834, 837 (S.D.1988); *Uken v. Sloat,* 296 N.W.2d 540, 542 (S.D.1980)).

## DECISION

I. THE TRIAL COURT DID NOT ERR IN GRANTING DEFENDANTS SUMMARY JUDGMENT AS OFFICIALS OR AGENTS OF THE STATE.

### A. *South Dakota Department Of Corrections.*

▬ The trial court properly granted summary judgment to Department. Under clear and binding federal precedent, "a State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45, 53 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66, 109 S.Ct. at 2309, 105 L.Ed.2d at 55. Department was entitled to summary judgment as a matter of law.

### B. Defendants Sued In Their Official Capacities.

Hafner sued Lynne Delano as the Secretary of Department, Walter Leapley as the Warden of the South Dakota Penitentiary and Edgar Ligtenberg as an Associate Warden. Again, clear and binding precedent establishes that state officials sued in their official capacities are not "persons" within the ambit of § 1983. The United States Supreme Court held:

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device. We hold that neither the State nor its officials acting in their official capacities are "persons" under § 1983.

*Will,* 491 U.S. at 71, 109 S.Ct. at 2312, 105 L.Ed.2d at 58 (citations omitted); *Zar v. S.D. Bd. of Examiners of Psychologists,* 976 F.2d 459, 464 (8th Cir.1992) ("to the extent that the individual defendants were sued in their official capacities and that the Board itself was sued, the defendants are not "persons" with the meaning of § 1983).

Insofar as Delano, Leapley, and Ligtenberg were sued in their official capacities, they were entitled to summary judgment as a matter of law.

### C. Defendants Sued As Agents Of The State.

It has been clearly established for over a decade that the theory of *respondeat superior* is not applicable in § 1983 actions. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Brown v. Wallace,* 957 F.2d 564 (8th Cir.1992) (the doctrine of *respondeat superior* does not apply in § 1983 actions); *Darrow v. Schumacher,* 495 N.W.2d 511, 516 (S.D.1993). Therefore, insofar as Defendants Armfield, Jacobson, Ligtenberg and Ziegler were sued as agents of

the state, they were properly granted summary judgment as a matter of law.

### II. THE TRIAL COURT DID NOT ERR IN GRANTING INDIVIDUAL DEFENDANTS SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY.

A state official may be held personally liable under § 1983 for actions taken in his or her official capacity which violate constitutional rights. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). "Through § 1983, Congress sought, 'to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position.'" *Hafer,* 502 U.S. at ——, 112 S.Ct. at 363, 116 L.Ed.2d at 311 (citations omitted). However, to prevail on an individual liability § 1983 claim for actions in an official capacity, a plaintiff must show either that the defendant personally participated in the alleged deprivation of protected rights, *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), or that the official abdicated policy-making and oversight responsibilities, *Stanley v. Lockhart,* 941 F.2d 707 (8th Cir.1991). Additionally, unlike an official sued in his official capacity, who may assert only such immunities as the governmental entity possesses, an official sued in his personal capacity may assert personal immunity defenses. *Hafer,* 502 U.S. at ——, 112 S.Ct. at 362, 116 L.Ed.2d at 309.

Qualified immunity is one such personal defense. Prison officials are shielded from personal liability for civil damages in § 1983 actions unless their conduct violates "clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).

The Eighth Circuit Court of Appeals has established a three part test to deter-

mine whether qualified immunity precludes a claim:

(1) First, we determine whether [the plaintiff] has asserted a violation of a constitutional right;

(2) Second, we determine whether the allegedly violated constitutional right was clearly established; and

(3) Third, we determine if, given the facts most favorable to the plaintiff, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged actions violated that right.

*Foulks v. Cole Cnty.,* 991 F.2d 454, 456 (8th Cir.1993) (citing *Cross v. City of Des Moines,* 965 F.2d 629, 631–32 (8th Cir.1992)).

▪ There is no doubt that Hafner has satisfied the first two prongs of the test. A prisoner's right to medical care has been clearly established for almost two decades. "These elementary principles [the Eighth Amendment] establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251, 259 (1976).

▪ As to the third prong of the test, to prevail on an Eighth Amendment claim for deprivation of medical care, a prisoner must prove that care was denied or was so inadequate that the denial constituted "deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291, 50 L.Ed.2d at 260. Therefore, to meet the third prong of the test, Hafner must show:

(1) Deliberate indifference on the part of prison officials; and

(2) The prisoner's medical needs must be serious.

*West v. Keve,* 571 F.2d 158, 161 (3rd Cir. 1978).

By prior orders, this Court has dismissed Hafner's appeal as to the Defendant doctors. Therefore, assuming *arguendo* Hafner's allegations of misdiagnosis, failure to relieve pain, and failure to adequately prescribe medication are true, to find a violation of his civil rights, Hafner must advance some actions or failures to act on the part of the remaining Defendants which were responsible for his allegedly inadequate medical care.

#### A. *Claims against Secretary Delano and Warden Leapley.*

Although Secretary Delano is named individually, Hafner does not allege any personal act or failure to act on her part. In fact, in his deposition response to the question "And did she [Secretary Delano] have any input in the medical care that you were receiving" Hafner answered, "No, she did not."

▪ The only personal action by Warden Leapley alleged by Hafner concerns letters written to Hafner and his parents. In Hafner's deposition, his response as to what actions of Leapley constituted deliberate indifference, he stated "I believe the letter I wrote to Mr. Leapley and his reply would constitute a refusal for medical care."

In Hafner's penitentiary medical file there is a letter from a doctor stating his opinion that Hafner's pain would subside in time and recommending that Hafner not try any further treatments for several months. Hafner's parents misunderstood the doctor's recommendation to be an order from the penitentiary's health services that Hafner was to receive no further treatment. They wrote to Warden Leapley.

In a reply letter, Leapley explained his review of Hafner's file disclosed: "Since June of 1989, he [Hafner] has been seen by Medical Personnel 26 times. He has been scheduled for downtown appointments with other doctors at least 10 times." The letter goes on to dispute Hafner's claim that he was not to receive further treatment. "You also state in your letter that 'according to your health service Richard is not to receive any further medical attention to his shoulder for six or seven months.' I can find no documentation of such an order in his file and assure you that if an inmate needs medical attention in this institution, the Medical Staff will see that he gets attention."

First, there is no evidence, and even Hafner does not expressly claim, that Leapley was somehow responsible for the doctor's medical opinion or recommendation. Second, Hafner continued to receive medical care. Leapley reviewed the file, determined that

Hafner was receiving medical care and took the time to write a response letter not only to Hafner but also to his parents. These actions do not amount to deliberate indifference to a serious medical need.

■ There remain the allegations concerning Hafner's lack of care after his same-day surgery. Hafner has presented no evidence that the alleged lack of treatment was as a result of a personal action or failure to take action on the part of Warden Leapley or that the care was part of a pattern of neglect. *Cf. Hill v. Marshall,* 962 F.2d 1209 (6th Cir.1992) (where deputy superintendent of treatment at county jail abandoned the specific duties of his position by failing to review and respond to inmates' complaints, he could be held personally liable where for months he ignored fact that prescriptions were routinely not filled or received and that head nurse often altered or disposed of inmates' prescriptions without doctors' approval), *cert. denied,* — U.S. —, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993); *Lockhart,* 941 F.2d at 707 (allegation warden failed to supervise surgery review committee which repeatedly delayed inmate's recommended "immediate" hernia surgery for ten months was sufficient to overcome a motion to dismiss § 1983 claim).

Viewing the facts most favorably to Hafner, there remain no genuine issues of material fact; neither Delano nor Leapley was deliberately indifferent to a serious medical need of Hafner and they were entitled to summary judgment as a matter of law.

### B. *Claims Against Associate Warden Ligtenberg and Defendants Jacobson and Ziegler.*

■ Hafner claims that Defendants Ligtenberg, Jacobson and Ziegler were deliberately indifferent to his serious medical needs as they did not release him from a job training program in which he had enrolled at the Springfield Correctional Facility. In *Jackson v. Cain,* the Fifth Circuit Court of Appeals explained that assignment to working conditions and access to medical care constitute two separate claims, *Jackson,* 864 F.2d 1235, 1246–47 (5th Cir.1989) (reversing grant of summary judgment where pro se defendant had been denied access to his medical

records and thus, could not provide the medical records to substantiate his claim that his work significantly aggravated his condition and caused him injury). The Fifth Circuit set forth a two-part test to determine whether assignment to working conditions constitutes deliberate indifference to a serious medical need:

1) The work must significantly aggravate the medical condition, causing injury to plaintiff; and

2) Officials knew of the specific danger because of the physical condition and yet ignored it.

*Jackson,* 864 F.2d at 1247.

■ Hafner asserts no facts which would rise to deliberate indifference on the part of these three Defendants. First, he admits that he voluntarily enrolled in the training program; unlike *Jackson* this is not a situation where Defendants assigned a prisoner to hard physical labor. Second, in his affidavit, Hafner admits that Jacobson told him he could be released from the vocational program if he obtained a medical release; *there is no medical release in the record.* Hafner admitted in his deposition that neither Jacobson nor Ziegler was involved in any of his medical care decisions, nor did he know of any involvement by Ligtenberg. Thus, there is no showing that the Defendants knew of a specific danger that the work would aggravate Hafner's medical condition. Third, Hafner does not dispute that the Defendants made special accommodations at Springfield so he would not have to lift heavy objects in class. Finally, Hafner provided no medical evidence that the program "significantly aggravated" his medical condition and caused him injury. Thus, he failed to bring forth any evidence which would show a constitutional deprivation under the *Jackson* test.

Viewing the facts most favorably to Hafner, there remain no genuine issues of material fact; Defendants Ligtenberg, Jacobson and Ziegler were entitled to summary judgment as matter of law.

### C. *Claim against Nurse Armfield.*

Nurse Armfield is the only remaining Defendant who actually participated in the medical treatment of Hafner. Hafner's only claim of indifferent medical treatment by

Nurse Armfield concerns her diagnosis and treatment the first time he sought medical care after his injury. He claims she refused to order an X-ray and infers she lied to him about whether there was a doctor available to see him in the clinic. He also claims she failed to follow the "health service police [sic] and procedure manual for strains and sprains." He acknowledges Nurse Armfield wrapped his shoulder in an ace bandage and gave him a heating pad to take back to his cell.

Taking all of Hafner's assertions as true, there is nothing in Nurse Armfield's treatment that amounts to deliberate indifference to Hafner's serious medical needs. First, because Hafner lied about the manner in which he had been injured, he contributed to Nurse Armfield's decision not to immediately refer him to a doctor. *Accord, Mid–Western Electric, Inc. v. DeWild Grant Reckert & Assoc.,* 500 N.W.2d 250 (S.D.1993) (recognizing contributory negligence as a defense to professional malpractice claims). Second, Hafner has presented no evidence that Armfield ever denied him treatment, ignored his complaint or intentionally treated him incorrectly. *Cf., Foulks,* 991 F.2d 454 (affirming denial of summary judgment where defendants refused to obtain medical treatment for prisoner taken from hospital to jail with severe head injury which failure to treat required removal of portion of detainee's brain); *Carswell v. Bay Cnty.,* 854 F.2d 454 (11th Cir.1988) (affirming § 1983 violation where, despite repeated requests for over two months, inmate was never examined by a doctor and diabetes went undiagnosed). At most, Hafner's claim against Nurse Armfield pertains to allegations of negligence or disagreement with the medical treatment he received, neither of which rise to the level of a constitutional violation.

"Certainly an X-ray of [Gamble's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray—or additional diagnostic techniques or forms or treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measure, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court.... Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle,* 429 U.S. at 106–07, 97 S.Ct. at 292–93, 50 L.Ed.2d at 261–62; *Martinez v. Turner,* 977 F.2d 421, 423 (8th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1658, 123 L.Ed.2d 277 (1993).

Nor do Nurse Armfield's alleged failures to follow policy manuals and preserve prisoner "kites" (request slips) amount to deliberate indifference to a serious medical need. It is settled law that officials sued for constitutional violations do not lose qualified immunity simply because their conduct violates some state regulation or administrative regulation. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Culbreath v. Block,* 799 F.2d 1248 (8th Cir.1986); *Popham v. City of Talladega,* 742 F.Supp. 1504, 1511 (N.D.Ala.1989), *aff'd* 908 F.2d 1561 (11th Cir.1990).

Viewing the facts most favorably to Hafner, there remain no genuine issues of material fact and Nurse Armfield was entitled to summary judgment as a matter of law.

### CONCLUSION

Over the nineteen months of his incarceration, the record indicates Hafner was examined and/or treated over fifty times by seven different doctors, two of them specialists. Although Hafner may disagree with their diagnosis, medical opinions and treatment, the medical care he received does not amount to a constitutional violation through deliberate indifference to a serious medical need on the part of prison officials or personnel.

We affirm the order of the trial court.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.