2000 SD 53

**Erin Colleen HART, Plaintiff and Appellant,**

v.

**Ronald MILLER, Jim Jones, Paul Christensen, Warren Anderson, Les Sterling, Tom Dravland, Gene Abdallah, and Various John Does, Defendants and Appellees.**

No. 20947.

Supreme Court of South Dakota.

Argued Dec. 2, 1999.

Decided April 19, 2000.

Michael D. Bornitz and Timothy L. James of James & Associates, Yankton, South Dakota, Attorneys for plaintiff and appellant.

Craig A. Kennedy and Alice L. Rokahr of Doyle and Kennedy, Yankton, South Dakota, Attorneys for defendant and appellee Miller.

Brent A. Wilbur and Neil Fulton of May, Adam, Gerdes and Thompson, Pierre, South Dakota, Attorneys for defendants and appellees Jones, Cristensen, Anderson, Sterling, Dravland, Abdallah and various John Does.

GILBERTSON, Justice

[¶ 1.] Plaintiff Erin Colleen Hart (Hart) appeals an order granting the motions for summary judgment of Defendants Ronald Miller (Miller) and Miller's supervisors [1] (Supervisors) on Hart's 42 U.S.C. § 1983 claim and other state claims.[2] Hart appeals. We affirm in part and reverse in part.

## FACTS AND PROCEDURE

[¶ 2.] On February 17, 1996, at approximately 1:00 a.m., Hart left the 8 th Street Pub in Yankton, South Dakota where she had been working. Hart was stopped and subsequently arrested by South Dakota Highway Patrolman Miller for running a stop sign, speeding, possession of drug paraphernalia, and driving under the influence of alcohol. Hart was then transported in Miller's patrol vehicle to the Yankton Police Department where she was processed and released.

[¶ 3.] Typically, after every physical arrest, Miller performed a search of his patrol car for contraband. However, on February 17, shortly after his contact with Hart, he was called to respond to a motor vehicle accident. Another officer sitting in Miller's patrol car discovered a baggie of marijuana in the passenger side door of the car. Miller believed the marijuana came from the person who was last in his patrol car prior to the officer's discovery. According to Miller, this would have been Hart.

[¶ 4.] On February 18, 1996, Miller attempted unsuccessfully to contact Hart several times through the Yankton Police Department as it is the officer's responsibility to follow-up and conduct an investigation during his or her own work shift.

At approximately 10:00 p.m., Miller went to Hart's apartment complex to see if she was home, but got no response. A Yankton Police Department dispatcher subsequently made telephone contact with Hart around 11:30 p.m. or 11:40 p.m. The dispatcher informed Hart that Miller had something he had to give her.[3] Hart replied she was in bed and would come to the police station in the morning to retrieve the item. Hart was then told Miller would come to her residence and speak with her there. When Miller arrived at Hart's apartment, he knocked and Hart consented to his entry into her apartment. Miller showed Hart the baggie of marijuana from his vehicle and inquired whether it belonged to her. Hart denied ownership of the marijuana. Miller did not accept her denial, and indicated he would turn the matter over to the State Division of Criminal Investigation. After approximately ten to fifteen minutes of hostile conversation and questioning, Miller left Hart's apartment when she told him to "get out of my apartment."

[¶ 5.] Hart claims Miller entered her apartment in an attempt to coerce her into having sex with him. Hart claims following her denial of ownership of the marijuana, Miller began advancing toward her and "backing her across the room." Hart testified at her deposition that as Miller was backing her across the room, he was continuously accusing her of being the owner of the marijuana and accusing her of lying. According to Hart, Miller backed her across the room until she was pushed against a television. She also claims that during this time Miller was looking her up and down in a sexually provocative manner, and asked her *what they were going*

---

1. Defendant/Appellee supervisors in this action include: Jim Jones, Paul Christensen, Les Sterling, Warren Anderson, Tom Dravland, Gene Abdallah, and various John Does.

2. Hart's state claims include false imprisonment, assault, invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress.

3. Hart also claims that Miller wrongfully withheld her keys after the arrest and retained them in his personal possession. These were not only the keys to her car but also to her apartment. However, it does appear by the time Miller arrived at the Hart apartment, Hart had secured the return of her keys from Miller through a friend.

to do about the marijuana. Hart claims she was under the impression that Miller was suggesting if she engaged in sexual activity with him, any legal problems with the marijuana would disappear. Hart claims it was only after she made it clear she would not engage in any sexual activity that Miller left her apartment.

[¶ 6.] Miller strenuously denies any improper conduct towards Hart. It is undisputed that Miller never touched Hart, never specifically mentioned sex, and did not overtly threaten her in any way.

[¶ 7.] Hart further claims that approximately two weeks later, on March 2, 1996, Miller approached her in his patrol vehicle while she was walking home at 1:00 a.m. Hart alleges Miller approached her from behind, then did a U-turn and came back to ask her where she was going. Hart responded she was heading home and Miller then left the area. Miller also denies this incident.

[¶ 8.] Hart subsequently filed her complaint in the First Judicial Circuit against Miller alleging false imprisonment, assault, invasion of privacy, negligent and intentional infliction of emotional distress, and violation of her civil rights under 42 U.S.C. § 1983. Hart filed an action against Supervisors based upon conspiracy, negligent retention and supervision, and violation of her civil rights under 42 U.S.C. § 1983. Miller made a motion for summary judgment, while Supervisors filed a motion to dismiss. The trial court gave a notice of intent to treat the motion to dismiss as a motion for summary judgment pursuant to SDCL 15–6–12(b). The order granting summary judgment was entered on January 22, 1999.

[¶ 9.] Hart appeals raising the following issues for our consideration:

1. Whether the trial court erred in granting summary judgment to Miller on Hart's § 1983 claim.

2. Whether the trial court erred in granting summary judgment to Supervisors on Hart's § 1983 claim.

3. Whether the trial court erred in granting summary judgment to Miller on Hart's state law claims.

4. Whether the trial court erred in granting summary judgment to Supervisors on Hart's state law claims of conspiracy and negligent supervision.

## STANDARD OF REVIEW

■ [¶ 10.] Our standard of review for a trial court's grant of a motion for summary judgment is well settled. As we recently stated in *Mattson v. Rachetto*:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1999 SD 51, ¶ 8, 591 N.W.2d 814, 817 (quoting *Estate of Shuck v. Perkins County*, 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586). Summary judgment is a preferred process to dispose of meritless claims. *Horne v. Crozier*, 1997 SD 65, ¶ 5, 565 N.W.2d 50, 52.

■ [¶ 11.] Whether Miller and Supervisors are shielded by sovereign immunity is a question of law, reviewed de novo, with no deference given to the trial court's legal conclusions. *Hansen v. S.D. Dept. of Transp.*, 1998 SD 109, ¶ 7, 584 N.W.2d 881,

883 (citing *Wilson v. Hogan*, 473 N.W.2d 492, 493 (S.D.1991)).

## ANALYSIS AND DECISION

### [¶ 12.] 1. Whether the trial court erred in granting summary judgment to Miller on Hart's § 1983 claim.

██ [¶ 13.] In its grant of summary judgment, the trial court found both Miller and Supervisors were protected by the doctrine of qualified immunity. This Court has recently addressed qualified immunity of a law enforcement officer under § 1983 claims, and the applicability of summary judgment to this type of case. In *Horne,* we stated:

Qualified immunity is a legal question to be decided by the court; thus, it is particularly amenable to summary judgment. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991)(per curiam). The Supreme Court has emphasized that "because '[t]he entitlement is an immunity from suit rather than a mere defense to liability,' *Mitchell v. Forsyth*, 472 U.S. 511, 526[, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411] (1985), we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* To find whether qualified immunity applies, the test is to ask if the officer's conduct violated clearly established statutory or constitutional rights a reasonable officer would have known at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987); *Gainor v. Rogers*, 973 F.2d 1379, 1382 (8th Cir.1992). This "objective legal reasonableness" standard means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531; *Hafner v. Delano*, 520 N.W.2d 587, 591 (S.D.

1994). Qualified immunity is a personal defense. *Hafner*, 520 N.W.2d at 591. *See Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

1997 SD 65, ¶ 6, 565 N.W.2d at 52–53.

[¶ 14.] This Court has also recently stated:

[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.

. . . .

[O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in [the following] sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent. (citations omitted).

*Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 27, 580 N.W.2d 606, 612 (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 530–31). *See also Gainor*, 973 F.2d at 1382 ("This [qualified immunity analysis] allows ample room for a good faith mistake by the officer since his conduct must be measured in terms of the belief of a reasonable officer based upon the facts then available to the officer").

[¶ 15.] Were these all the facts of this case, there would be immunity for Miller, as his investigatory techniques, while perhaps not a model of timing and tact, were within the good faith mistake protection offered by qualified immunity. He clearly had probable cause to investigate the matter. However his ambiguous question,

"what were they going to do about [the marijuana]" must be examined in light of his prior conduct. The following are from affidavits and in one instance another lawsuit involving Miller, all of which were considered by the trial court in this case.

[¶ 16.] K.K.[4] testified that in 1986 when she was 15, she was in a car that was stopped by Miller. Miller found a can of beer in K.K.'s possession. K.K. testified Miller ordered the other occupants of the vehicle to leave the area and removed K.K. to his patrol car. K.K. then testified:

> Trooper Miller advised me that I would be taken to jail and finger printed. *He then asked whether there was anything else we could do to avoid the situation.* At that time I began to cry and became very afraid. Trooper Miller made me stand against the car and proceeded to feel up both of my legs to my crotch area. He then rubbed his hand between my breasts. He then rubbed his hand beneath my breasts making physical contact by lifting them ... I was dressed in a top which would make it obvious that there could not have been anything hidden in my breast area.

(emphasis added).

[¶ 17.] T.G. testified by affidavit that when she was a junior in high school in 1993 she was stopped on at least two occasions by Miller. She further testified:

> On one occasion I was with two girlfriends when Trooper Miller stopped me on Highway 50 near the South Dakota State Hospital and gave me a speeding ticket. At that time I advised Trooper Miller that my father would be upset about my having received so many tickets. Trooper Miller responded by stating he had a spare bed at his house. Thereafter Trooper Miller followed me on approximately twelve occasions. When he saw me in a vehicle he would turn around and follow me up and down the street.

**4.** The initials in the following paragraphs represent the names of women who have also brought allegations against Miller.

[¶ 18.] B.S. testified by affidavit that in 1992 Miller stopped her for speeding. B.S. further testified:

> Trooper Miller was conversing with me in a manner which caused me to be very uncomfortable. Trooper Miller continued to stare at my body while asking me questions in his vehicle and at one point asked me to turn toward him.

> . . . .

> While behind my vehicle, Trooper Miller made implications to the effect that he would void the speeding ticket and let me go in exchange for sexual relations with him. I advised Trooper Miller that I was not going to do that and I left.

[¶ 19.] A.J. testified that Miller stopped her in September of 1993. She claimed he told her she was being stopped because she had out-of-state license plates. Upon questioning by Miller she informed him she was living alone as her husband was serving in the military in Panama. She further testified:

> Trooper Miller was conversing with me in an uncomfortable and flirtatious manner. Trooper Miller continued to stare at my body while asking me questions. At that point Trooper Miller was very talkative and appeared to be making conversation in an attempt to prolong the traffic stop even though I had done nothing wrong and my license check indicated no warrants or restrictions. Trooper Miller continued making conversation with me until such time that I advised him that I was coming from work in Yankton where I was employed as a secretary with a local law firm. As soon as I informed him that I was an employee of a law firm his manner changed and he became more professional in demeanor, abruptly terminated the traffic stop and allowed me to go.

[¶ 20.] There is also the complaint of T.P. that resulted in a separate legal action against Miller and his superiors. [T.P.] v. Miller, et. al., Yankton Co. Civ. 94–299. Miller stopped her in 1993 and a bag of marijuana was found in the car in which she was riding. In denying Miller's motion for summary judgment on claims of intentional infliction of emotional distress and false imprisonment, the [T.P.] trial court summarized T.P.'s deposition testimony as follows:

> [T.P.] claims that *Miller said that he did not want to take her to jail and that he should give her some option so that the situation could be corrected. Id.* at 49. *[T.P.]* asserts that she believed that the options which Miller was referring to meant sex. *Id.* [T.P.] also asserts that when asked for options, she told Miller to take her to jail. *Id.* at 50. [T.P.]stated that Miller told her that if she did not want to go to jail he would have to search her again to make sure that she did not have anymore drugs on her, and that he would have to search her bra. *Id.* at 51–52
>
> [T.P.] claims that Miller asked her to remove her blouse which she did. *Id.* at 52. [T.P.] first took off her coat and left that sitting behind her. *Id.* [T.P.] then unbuttoned her blouse and slipped it off behind her with her coat. *Id.* at 53. [T.P.] states that she unbuttoned the bra and removed it from her shoulders. *Id.* at 54. [T.P.] removed the bra so that it was in her hands and her arms were covering her chest. *Id.* [T.P.] stated that the bra was off for a few seconds before she put it back on. *Id.* [T.P.] claims that she did not question the search procedure and thought that this was the way they searched a person. *Id.* at 52.
>
> [T.P.] also claims that while she was putting the bra back on, Miller commented that she had a nice chest and asked if she would mind if he touched it.

> *Id.* at 53. [T.P.] replied, "Yes I mind." *Id.* at 54. [T.P.] stated that Miller never touched the bra during the search. *Id.* at 55.[5] (emphasis added).

After discovery, the State settled this suit out of court. The terms of the settlement are unknown. Patrol Superintendent Abdallah testified that based on the settlement of this case, he asked for and received Miller's resignation as a Highway Patrolman.

[¶ 21.] Hart's basis for imposing liability under § 1983 is premised upon the manner in which Miller allegedly approached her at her apartment during his investigation. According to Hart, Miller looked at her provocatively, and she inferred from Miller's actions he wanted sex from her. Although it is undisputed Miller did not physically touch Hart, and she consented to Miller's entry into her apartment, Miller was quoted by Hart as offering her a trade-off of dismissal of the complaint for sex when he stated, "what are we going to do about it?"

[¶ 22.] At this stage of the proceeding, under summary judgment principles we are required to accept as true the testimony of Hart, K.K., T.G., B.S. and A.J. as well as the testimony of T.P.

■ [¶ 23.] The first prong of the *Horne* test is whether the conduct of the defendant violated a "clearly established constitutional or statutory right." 565 N.W.2d at 53. Although not a model of clarity, it appears that Hart claims she was denied the constitutional right of equal protection of the law by being discriminated against upon the basis of her sex.

■ [¶ 24.] Soliciting sex in exchange for not making an arrest has been found to be a violation of equal protection. *Antia v. Thurman*, 914 F.Supp. 256 (N.D.Ill.1996). In *Antia*, a complaint survived a motion to dismiss where it was alleged a law enforcement officer pulled the plaintiff over and

---

**5.** In the proper application of summary judgment principles, the trial court viewed the facts in the light most favorable to the non-moving party, that being T.P.

detained her for over an hour simply because she was a Hispanic female. *Id.* at 257. During the stop, she was forced to sit in the patrol car, leaving a four-month-old baby alone in her car. The officer played music on the radio of his patrol car, asked her personal questions, commented on her appearance, and threatened to follow her home and force her to cook for him. The officer also threatened to take her into custody when she expressed concern for leaving her baby alone. During the stop, the officer attempted to force the plaintiff to pick the traffic citation up from his lap, and made a derogatory comment about "Puerto Rican girls" when she refused. Finally, the officer wrote a personal note to the plaintiff's husband on the back of the citation, telling him his wife was beautiful.

[¶ 25.] Hart also claims she has a constitutional right to bodily integrity. Such a right has been recognized under the due process clause. *Rogers v. City of Little Rock*, 152 F.3d 790, 795 (8th Cir. 1998); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir.1997). In *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir.1997), the court recognized a due process right to be free of unwelcome "sexual fondling and touching or other egregious sexual contact" by a police officer acting under color of law.

[¶ 26.] The second prong of the *Horne* test requires an examination of the objective reasonableness of Miller's actions. *Horne*, 1997 SD 65, ¶ 13, 565 N.W.2d at 54. We must determine whether a reasonable officer would have believed his actions were lawful. Miller's subjective beliefs about the investigation are irrelevant. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.

[¶ 27.] Miller was investigating the presence of marijuana found in his patrol car shortly after Hart had been arrested. Investigation into the presence of this marijuana and its ownership was clearly warranted, as Miller stated in his affidavit: "[s]ince I was the original officer who made the arrest, I was required under my training guidelines to follow up the investigation by myself." However, the unconsented seeking of sexual favors in exchange for ignoring a violation of the criminal law "could not be considered part of any legitimate police function." *Rogers*, 152 F.3d at 796. It is an " 'arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.' " *Id.* at 797 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043, 1057 (1998)). The act of solicitation is not rendered proper where there is a lack of accompanying physical force or explicit threats. Such violations can be based on mental coercion of the situation. *Id.* (citing *Leyra v. Denno*, 347 U.S. 556, 558, 74 S.Ct. 716, 98 L.Ed. 948 (1954)).[6] A reasonable officer would have known the powers of his office do not include the right to solicit sex from women in exchange for the ignoring of a criminal offense. *Id.* at 798.[7]

[¶ 28.] The trial court measured Miller's actions against a standard of objective reasonableness. On this basis, the court

---

**6.** A key element is the implied coercion that Hart would be arrested for possession of marijuana if she did not consent to Miller's demands. In *Reeve v. Oliver*, 41 F.3d 381 (8th Cir.1994), an animal control officer was sued under 42 U.S.C. § 1983 for intentionally touching and rubbing the female plaintiff's back and staring at her chest. In upholding a dismissal the court noted that while many acts may amount to a state tort, § 1983 actions are reserved for serious violations and were not meant to supersede state tort systems. *Id.* at 383. The defendant in *Reeve* was only investigating a complaint of a barking dog and exerted no state granted authority or coercion over the plaintiff.

**7.** SDCL 32–2–12 sets forth the general duties of the Highway Patrol are: " [e]xcept as otherwise specifically provided, the division of highway patrol is entrusted with the enforcement of all laws, police regulations, and rules governing the operation of motor vehicles and motor carriers."

found that a reasonable officer in Miller's position would have believed his actions were lawful and not in violation of Hart's constitutional rights. However, it failed to focus on whether a question of fact exists as to the meaning of Miller's question to Hart and the claims of prior misconduct as interpreting the meaning of his ambiguous statement. "[I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. While Miller could properly question a suspect when circumstances reasonably indicate it is necessary, (see *Spenner*, 1998 SD 56, ¶ 29, 580 N.W.2d at 613), he was not at liberty to offer immunity from prosecution in exchange for sexual favors.

[¶ 29.] We reverse on this issue and remand for a trial where the jury will judge the credibility of the witnesses as to what really occurred and determine whether Miller's conduct was for a proper reason or not.

[¶ 30.] **2. Whether the trial court erred in granting summary judgment to Supervisors on Hart's § 1983 claim.**

[¶ 31.] Hart properly alleged in her complaint that all the Supervisors are employees of the South Dakota Highway Patrol. However, Hart's pleadings in this case do not indicate whether Supervisors were sued in their official capacity; she simply referred to them by their names in the caption. "If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir.1995). In *Egerdahl*, the Eighth Circuit specifically rejected Egerdahl's argument she had sued the officials in their individual capacity because she referred to them by their names in the caption. *Id.* at 620. Because

Hart's complaint is silent as to whether Supervisors were sued in their official capacity, we will interpret the complaint as including only official capacity claims.[8]

[¶ 32.] A party cannot maintain a § 1983 action against a state official if the claim is against the official in his official capacity. *Hafner*, 520 N.W.2d at 591; *Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45, 53 (1989). Precedent establishes that state officials sued in their official capacities are not "persons" within the ambit of § 1983. This Court has stated:

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device. We hold that neither the State nor its officials acting in their official capacities are "persons" under § 1983.

*Hafner*, 520 N.W.2d at 591 (quoting *Will*, 491 U.S. at 71, 109 S.Ct. at 2312, 105 L.Ed.2d at 58). Insofar as Supervisors were sued in their official capacities, they were entitled to summary judgment as a matter of law.

[¶ 33.] Even if Hart had sued Supervisors in their individual capacity, Hart's claim would fail. The liability of Supervisors under § 1983 must be based on more than their right to control employees. *Payton v. City of Detroit*, 211 Mich.App. 375, 536 N.W.2d 233, 245 (1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 ( [6th Cir.1984] )). A supervisory official's liability under § 1983 cannot be based solely on the theory of respondeat superior. *Id.* The court in *Payton* stated

---

**8.** Hart's claims themselves also demonstrate her intent to sue Supervisors in their official capacities. Hart alleges that Supervisors failed to properly supervise and/or discipline Miller. These claims focus on the official duties of Supervisors, further supporting the conclusion that Hart's claims are made against Supervisors in their official capacities.

in order for a plaintiff to hold a supervisory official liable for violations of civil rights:

> [t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Id.* The court pointed to *Smith v. Heath,* 691 F.2d 220 ( [6th Cir.1982] ) as an example of holding a supervisory official liable. *Payton,* 536 N.W.2d at 246. In *Smith,* a police supervisory officer was liable under § 1983 because he, as the officer in charge of the investigation, was directly responsible for and personally participated in the unconstitutional search of the plaintiff's home. 691 F.2d at 225.

■ [¶ 34.] In this case, Supervisors were not directly involved in Miller's investigation at Hart's apartment. There is an insufficient showing in the record Supervisors authorized, approved, or knowingly acquiesced in the alleged conduct of Miller against Hart. A § 1983 plaintiff must prove that the alleged policy of the superiors "was the moving force behind the constitutional violation." *Rogers,* 152 F.3d at 799 (citing *Jane Doe A. v. Special Sch. Dist.,* 901 F.2d 642, 646 (8th Cir.1990)). *See also Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509, 521 (1981). No such showing having been made, Supervisors are entitled to be granted summary judgment.

[¶ 35.] We affirm on Issue 2.

**[¶ 36.] 3. Whether the trial court erred in granting summary judgment to Miller on Hart's state claims.**

[¶ 37.] *Sovereign Immunity*

■ [¶ 38.] Hart's tort claims of false imprisonment, assault and invasion of privacy when applied to her factual allegations are all intentional torts. One does not negligently solicit sexual favors. Sovereign immunity does not apply, as it is inapplicable to intentional torts committed by state employees. *Bego,* 407 N.W.2d at 808; *Gasper v. Freidel,* 450 N.W.2d 226, 229 (S.D.1990); *Ritter v. Johnson,* 465 N.W.2d 196, 198 (S.D.1991). As such we do not reach the issue of whether Miller was acting in a ministerial or discretionary capacity.

[¶ 39.] *A. False Imprisonment*

■ [¶ 40.] False imprisonment is an unlawful detention or restraint of a person against his or her will. *Spenner,* 1998 SD 56, ¶ 17, 580 N.W.2d at 611 (citing *Darrow v. Schumacher,* 495 N.W.2d at 522). Miller clearly had legal authority to investigate the facts surrounding the marijuana found in his patrol car. Hart consented to Miller's entry into her apartment, she was not handcuffed, and no weapon was drawn. There is no indication from the record Miller used any force during his brief questioning. It is undisputed Miller did not restrain or even touch Hart at any time. Miller never prevented her from leaving because she never attempted to leave. Hart also concedes Miller had a right to question her about ownership of the marijuana. When she ordered him to leave her apartment, he did so. Thus the trial court was correct in dismissing the claim for false imprisonment.

[¶ 41.] *B. & C. Assault and Invasion of Privacy*

■ [¶ 42.] Hart claims Miller's actions create a question of fact for a jury on whether he committed assault and invasion of her privacy, and thus, the trial court erred in granting Miller summary judgment. However, Hart's appellate brief cites no authority for her argument. Failure to cite authority waives this argument. SDCL 15–26A–60(6); *State v. Pellegrino,* 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599.

[¶ 43.] The trial court properly granted summary judgment to Miller on Hart's

state law claims.[9] Therefore, we affirm on Issue 3.

**[¶ 44.] 4. Whether the trial court erred in granting summary judgment to Supervisors on Hart's state law claims of conspiracy and negligent supervision .**

 [¶ 45.] For this claim, Hart cites no legal authority in support of her argument. Again, failure to cite authority for an argument on appeal constitutes waiver of that issue. SDCL 15–26A–60(6); *Pellegrino*, 1998 SD 39, ¶ 22, 577 N.W.2d at 599.

## Conclusion

[¶ 46.] We reverse and remand for trial on the § 1983 claim against Miller. We affirm summary judgment on the balance of the claims.

[¶ 47.] MILLER, Chief Justice and KONENKAMP, Justice, concur.

[¶ 48.] SABERS and AMUNDSON, Justices, concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 49.] I concur in Issues 1, 2 and 4.

[¶ 50.] I dissent on Issue 3 concerning Hart's state law claims against Miller for false imprisonment, assault and invasion of privacy.

[¶ 51.] Certainly there are genuine issues of material fact as to all three of these claims when the evidence is viewed in the light most favorable to Hart. *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19, 21 (1968).

[¶ 52.] Patrolman Miller had legal authority to investigate but not at that time and place, under *those* circumstances. There was no free and voluntary consent by Hart to let Miller enter her apartment – only a forced, coerced, intimidated

will overcome by a pushy officer intent on "doing his thing."

[¶ 53.] Miller falsely imprisoned Hart for 15 minutes. He assaulted her sexually – it is not necessary to touch her for assault as that would be battery, not assault.

[¶ 54.] Miller also clearly invaded Hart's privacy after 11:00 o'clock at night as that term is defined (at page 16 of Hart's appellate brief) in *Krueger v. Austad*, 1996 SD 26, ¶ 33, 545 N.W.2d 205, 215–16:

> An actionable violation of the right of privacy has been acknowledged by this court to be:
>
> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

(quoting *Truxes v. Kenco Enterprises, Inc.*, 80 S.D. 104, 119 N.W.2d 914, 916 (1963) (citation omitted)). Therefore, the majority's claim that Hart failed to cite authority is clearly wrong.

[¶ 55.] Therefore, summary judgment on these state law claims should not have been granted and we should reverse and remand Issue 3 for trial.

AMUNDSON, Justice (concurring in part, dissenting in part).

[¶ 56.] I respectfully dissent on issue one.

[¶ 57.] The primary purpose of 42 U.S.C. § 1983 is "to aid in the 'preservation of human liberty and human rights.'" *Jackson v. Griffin*, 1986 WL 6920, *3 (N.D.Ill. 1986) (quoting *Owen v. City of Independence*, 445 U.S. 622, 636, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673, 684 (1980) (quoting Congressional Globe, 42d Cong., 1st Sess. App. 68 (1871) (Rep.Shellabarger))). Further, "[s]ection 1983 stands for the com-

---

**9.** Hart did not appeal her claims of intentional infliction of emotional distress and negligent infliction of emotional distress against Miller.

mitment that American society 'is to be governed by law and to protect the rights of those without power against oppression at the hands of the powerful.' " *Id.* (quoting Blackmun, Harry A., *Section 1983 and Federal Protection of Individual Rights – Will the Statute Remain Alive or Fade Away?*, 60 NYULRev 1, 28 (1985)).

[¶ 58.] To establish a cause of action under § 1983, one must prove two elements. "First, a plaintiff must allege that defendant or defendants acted under color of state or territorial law. Second, the plaintiff must allege that the action taken deprived him of a federal right." *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572, 577 (1980); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185, 193 (1978); *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1145 (2d Cir. 1986); *Barnier v. Szentmiklosi*, 565 F.Supp. 869, 870 (E.D.Mich.1983)).

[¶ 59.] Under certain circumstances, a public officer, such as a police officer in the present case, may raise the defense of "qualified immunity" to avoid liability under § 1983. We have previously held that "[t]o find whether qualified immunity applies, the test is to ask if the officer's conduct violated clearly established statutory or constitutional rights a reasonable officer would have known at the time." *Horne v. Crozier*, 1997 SD 65, ¶ 6, 565 N.W.2d 50, 52 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982) (citations omitted)). In the present case, to overcome the first element of the *Horne* test, Hart must "allege the violation of a *clearly established constitutional or statutory right.*" *See Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1227 (D.Maine 1996) (emphasis added). If the right which is alleged to have been violated is clearly established, "the court assumes that the police officer in question knew of this

right." *Id.* Further, "if the right is clearly established, qualified immunity will only be denied if a reasonable officer should have known that the challenged conduct violated that established right." *Id.* (citing *Rodriguez v. Comas*, 888 F.2d 899, 901 (1st Cir.1989)). In discussing application of qualified immunity, the Maine District Court stated,

> [t]he Supreme Court has extended qualified immunity generously, imposing a heavy burden on plaintiffs to establish liability. [citation omitted.] This policy is justified on a variety of grounds, not least of which is a fear that "personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." [citation omitted.]

*Id.*

[¶ 60.] In the present case, Hart is seeking damages under § 1983 based upon the manner in which Miller allegedly approached her at her apartment during his investigation. According to Hart, Miller looked at her provocatively, and she inferred from Miller's actions he wanted sex from her. It is undisputed Miller did not physically touch Hart and Hart consented to Miller's entry into her apartment. Hart's allegations in her complaint involved actions committed by a police officer acting under color of state law; therefore, the first element of a § 1983 cause of action is easily satisfied. Where the conflict arises is with the second element; was Hart deprived by Miller of a constitutional right? Further, was this constitutional right *clearly established* so as to attack Miller's defense of qualified immunity.

[¶ 61.] The main question before this Court is whether a police officer's alleged "leering and provocative looks" and his question "what were they going to do about [the marijuana]" amounts to a violation of a "clearly established constitutional right." [10] Hart contends for the first time

---

**10.** Whether a look was in fact "leering and provocative" would be a question for the jury to answer. However, how does one go about proving that a look was leering and provocative? How do you define this type of look? How would you instruct a jury on this ques-

in this case that Miller's conduct violated her liberty interest in her own physical safety and right to bodily integrity. It is the well-settled rule of this Court that if a party fails to raise an issue at the trial court level, it would be inappropriate to consider this issue for the first time on appeal. *See Grand State Property, Inc. v. Woods, Fuller, Shultz & Smith,* 1996 SD 139, ¶ 19, 556 N.W.2d 84, 88 (citing *Mayrose v. Fendrich,* 347 N.W.2d 585 (S.D. 1984)). The majority, however, has disregarded this rule and considered this issue for the first time. Therefore, I will address it also.

[¶ 62.] The cases cited by the majority to support their reversal and remand of this issue are clearly distinguishable. In *Antia v. Thurman,* 914 F.Supp. 256, 257 (N.D.Ill. 1996), Antia was allegedly detained based upon her Hispanic ethnicity and was subject to numerous derogatory comments about "Puerto Rican girls." In *Rogers v. City of Little Rock, Arkansas,* 152 F.3d 790, 794–95 (8th Cir.1998), a police officer stopped a woman, followed her home, entered the residence, and raped the woman. In *Haberthur v. City of Raymore, Missouri,* 119 F.3d 720, 721 (8th Cir.1997), Haberthur was followed by Officer Untrif, who ultimately placed his hand under her sweatshirt and fondled her breast, chest and side, and also propositioned her to go back to his place. The present case does not contain such a clear-cut liberty interest violation as the previously mentioned cases. We are not presently faced with a situation where a police officer has made specific sexual comments, touched the plaintiff, or committed a sexual assault upon the plaintiff. Instead, we are faced with whether an alleged "leering look" and a vague, ambiguous comment rises to the level of deprivation of a constitutional right.

[¶ 63.] To establish that Officer Miller is liable to Hart, Hart must show that Mil-

ler's "conduct violates ... *clearly established* constitutional or statutory rights." *See Horne,* 1997 SD 65, ¶¶ 6–7, 565 N.W.2d at 52–53. A review of case law from other jurisdictions reveals that various jurisdictions have found that a person has a right to bodily privacy, a right to protection against unreasonable bodily intrusions and the right to be free from unwelcome sexual fondling, touching or other "egregious sexual contact." *See Rogers,* 152 F.3d at 795–96. Most often, these rights have been applied in the situations where the officer has made an outright sexual comment or contact with the plaintiff. *See e.g., United States v. Lanier,* 520 U.S. 259, 267–71, 117 S.Ct. 1219, 1226–28, 137 L.Ed.2d 432, 442–46 (1997) (involving the sexual assault by a state judge); *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1197 (4th Cir. 1996), *cert. denied,* 519 U.S. 819, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996) (discussing abusive sexual conduct in a state facility); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450–52 (5th Cir.1994) (finding liberty interest in bodily integrity in a case involving sexual abuse of school children by a teacher); *Sepulveda v. Ramirez,* 967 F.2d 1413, 1415–16 (9th Cir.1992) (establishing right to bodily privacy case where parolee observed while providing urine sample); *Haberthur,* 119 F.3d at 723 (recognizing the right to be free from unwelcome sexual fondling, touching or other egregious contact where a police officer had fondled a woman's breasts). Only one case could be found that contained facts similar to the present case. In *Reeve v. Oliver,* 41 F.3d 381 (8th Cir.1994), the court was faced with the intentional touching and rubbing of Reeve's back and *staring at Reeve's chest* by a Des Moines, Iowa Animal Control Officer. Reeve's ultimately brought an action against Officer Oliver alleging that he "deprived her of 'liberty and privacy interests and equal protection rights in being free from sexual harassment by a

tion? Would you be required to submit expert testimony to distinguish a "leering and provocative" look from any other look? Does

the mere fact that Hart said it was "leering and provocative" carry the burden of proof that it is? If so, is this not very subjective?

State actor.'" *Id.* at 382. The Eighth Circuit Court of Appeals found that Reeve had no claim and held,

> [Reeve] has failed to allege a constitutional violation. Though Oliver's alleged conduct may have been improper, it does not rise to the level of a constitutional violation. Reeve's arguments that she was somehow deprived of her Fourteenth Amendment rights of privacy, liberty, and equal protection are without merit. As we stated in *Gregory v. City of Rogers*, 974 F.2d 1006, 1009 (8th Cir. 1992), *cert. denied*, [507 U.S. 913], 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993), *"Many harms, though caused by a state actor, do not fall within the scope of section 1983, for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws."* Reeve must look to state law for a remedy.

*Id.* at 383 (emphasis added). Hart has failed to show that she suffered a harm within the scope of § 1983.

[¶ 64.] The majority is saying that based upon Miller's prior alleged acts, intent is required under a § 1983 action. This analysis by the majority is totally outside the scope of a § 1983 action. "It is well established that specific intent is not a prerequisite to liability under § 1983." *See Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.1992) (citations omitted). In determining liability under § 1983, we must look to what happened during the particular encounter to determine whether a constitutional right has been violated. What does an analysis of Miller's intent based upon these other instances prove in this § 1983 action? I submit nothing.

[¶ 65.] Although Trooper Miller's conduct is not exemplary, that in and of itself does not equal a violation of a clearly established constitutional right. Basing a claim such as this on such a subjective basis as to what was intended by one looking at someone else, would seem to open up the flood gates to any ingenious theory for a § 1983 claim. Will we be next dealing with a mind reader? This decision, I submit, opens up a "font of tort law" in this jurisdiction; therefore, I would affirm issue one.

[¶ 66.] I concur in the remaining issues.